815 F.Supp. 1309 (1992)
ALLSTATE INSURANCE COMPANY, Plaintiff,
v.
Shaucat SALAHUTDIN, Jennie S. Salahutdin, Felicisimo I. Alcantara and Evelyn C. Alcantara, Defendants.
No. C-91 4492 EFL.
United States District Court, N.D. California.
May 15, 1992.
*1310 Cynthia Mellema, Sonnenschein, Neth & Rosenthal, San Francisco, CA, for plaintiff.
Lola Ellwein, Miller, Starr & Regalia, Walnut Creek, CA, for defendants Salahutdin.
G. Berglund, Half Moon Bay, CA, for defendants Alcantara.

ORDER GRANTING SUMMARY JUDGMENT FOR PLAINTIFF
LYNCH, District Judge.
Plaintiff Allstate Insurance Company has filed a declaratory relief action. Defendants Shaucat Salahutdin and Jennie S. Salahutdin have cross-complained alleging bad faith. Allstate now brings summary judgment motions on both the declaratory relief action and the bad faith action. For the reasons set forth below, the Court GRANTS both motions.

STATEMENT OF FACTS
The Salahutdins and Alcantaras[1] are neighbors. These parties dispute the ownership of a strip of land between their properties. In December 1989, the Alcantaras began building a fence in the disputed land. The fence builders used a string to align the fence. This string was attached to the Salahutdins' address pole. Mrs. Salahutdin, upset that the Alcantaras were building a fence on what she believed to be her property, removed the string.
The Salahutdins filed suit on September 5, 1990, against the Alcantaras claiming a prescriptive easement and easement by estoppel across the disputed land. The Alcantaras cross-complained for intentional infliction of emotional distress and trespass. The cross-complaint alleges only these two causes of action, both of which are intentional torts. They based this cross-complaint upon the actions of Mrs. Salahutdin when she removed the string from her address pole. The Alcantara's cross-complaint is the subject of this declaratory relief action.
The Salahutdins had purchased an Allstate Deluxe Plus Homeowners Policy. That policy covered, under Section II  Family Liability Protection, "damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an accident...." The policy also provided for a duty to defend.
On May 21, 1991, the Salahutdins tendered to Allstate the defense of this cross-complaint. On October 24, 1991, coverage counsel for Allstate determined that the Salahutdins' policy did not cover the damages complained of in the Alcantaras cross complaint. Specifically, Allstate correctly states that the policy only covered "damages arising from an accident." Allstate contends that Mrs. Salahutdin's action in removing the string from the address pole was an intentional act. Further, Allstate claims that an intentional act cannot be an accident. Accordingly, Allstate asserts that there is no coverage.
The Salahutdins admit that Mrs. Salahutdin intended to remove the string from the address pole and that all of her actions were taken deliberately. But, the Salahutdins contend that the term "accident" should be applied to the consequences of the act, not the act itself. They claim that Mrs. Salahutdin did not intend to damage the Alcantaras. They allege that she did not intend to trespass, nor physically or emotionally injure the Alcantaras. Essentially, the Salahutdins claim that the policy covers the Alcantara cross-complaint because it covers intentional acts which are not intended to inflict injury.

DISCUSSION

I. Declaratory Relief Claim

The duty to defend requires an insurance company to defend its insured against any loss potentially covered by the insurance policy. Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1364 (9th Cir.1991); Gray v. Zurich Ins. Co., 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). The insured initially bears the burden of demonstrating *1311 that the claim is potentially within the scope of the basic coverage. Chamberlain, 931 F.2d at 1364; Royal Globe Ins. Co. v. Whitaker, 181 Cal.App.3d 532, 537, 226 Cal.Rptr. 435 (1986).
The burden then shifts to the insurance company to prove that a policy exclusion applies. Merced Mutual Ins. Co. v. Mendez, 213 Cal.App.3d 41, 47, 261 Cal.Rptr. 273 (1989). Because the scope of the basic coverage provision is at issue in this case, and not a policy exclusion, the Salahutdins bear the burden of proof. Thus, the Salahutdins must show that the underlying action arises from an "accident."[2]
Essentially, the issue in this case is whether an insurance coverage provision limited to "damages arising from an accident" precludes coverage when the insured intends his actions, but not the resulting damage. The law on this issue in California is not entirely consistent. Compare Commercial Union Ins. Co. v. Superior Court, 196 Cal. App.3d 1205, 1208, 242 Cal.Rptr. 454 (1987) ("accident" refers to insured's general intent to act, not intent to cause harm) with Mullen v. Glens Falls Ins. Co., 73 Cal.App.3d 163, 169-71, 140 Cal.Rptr. 605 (1977) ("accident" refers to insured's subjective intent to cause harm); see also Kornblum, Kaufman & Levine, Cal. Prac. Guide: Bad Faith (TRG 1990), §§ 8:97.1-8:97.3. However, the more recent cases focus on the nature of the act itself, not the intent of the insured to cause damage. Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1364 (9th Cir.1991); Merced Mutual, 213 Cal.App.3d at 50, 261 Cal.Rptr. 273; Commercial Union, 196 Cal.App.3d at 1208-09, 242 Cal.Rptr. 454; Royal Globe Ins. Co. v. Whitaker, 181 Cal.App.3d 532, 537, 226 Cal.Rptr. 435 (1986); St. Paul Fire & Marine Ins. Co. v. Superior Court, 161 Cal. App.3d 1199, 208 Cal.Rptr. 5 (1984). Even where the intentional act gives rise to negligence or emotional distress claims, the courts have refused to consider these losses "accidental." Chamberlain, 931 F.2d at 1365; Dyer v. Northbrook Property & Cas. Ins. Co., 210 Cal.App.3d 1540, 259 Cal.Rptr. 298 (1989); Commercial Union, 196 Cal.App.3d at 1205, 242 Cal.Rptr. 454. Instead, the courts have focused on the nature of the act giving rise to the claims. Chamberlain, 931 F.2d at 1365; Dyer v. Northbrook Property & Cas. Ins. Co., 210 Cal.App.3d 1540, 259 Cal.Rptr. 298 (1989); Commercial Union, 196 Cal.App.3d at 1205, 242 Cal.Rptr. 454. Thus, "where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury." Allstate Ins. Co. v. LaPore, 762 F.Supp. 268 (N.D.Cal.1991) (citing Merced Mutual, 213 Cal.App.3d at 50, 242 Cal.Rptr. 454).
In construing coverage provisions similar to that at issue here, the term "accident" has been defined as "`arising from extrinsic causes[;] occurring unexpectedly or by chance[; or] happening without intent or through carelessness.'" St. Paul Fire & Marine, 161 Cal.App.3d at 1202, 208 Cal. Rptr. 5 (quoting Webster's Ninth New Collegiate Dict. 49 (1983)). More to the point, the court in Royal Globe Ins. Co. v. Whitaker, 181 Cal.App.3d 532, 537, 226 Cal.Rptr. 435 (1986) stated, "an intentional act is not an `accident' within the plain meaning of the word. [Citations.]" The court then concluded that "[t]he same roadblock at the definition of `accident' halts any argument that the [insured] intended his act but not the resulting harm." Id.
The Ninth Circuit addressed the same coverage provision as in the present case and found that it did not cover intentional acts by the insured, even when the insured did not intend the resulting damage. Chamberlain v. Allstate Ins. Co., 931 F.2d 1361 (9th Cir. 1991). In Chamberlain, an insured sought coverage under his Allstate Deluxe Plus Homeowners' Policy for claims by his former girlfriend for one-half of the property acquired during their relationship. The girlfriend claimed that the couple had entered into a quasi-marital agreement to share all *1312 "community" property. The coverage provision in the policy was virtually identical to the provision in the Salahutdins' policy. See id. at 1363. The insured claimed that although he intentionally terminated the relationship with his girlfriend, he did not intend any damage. The Ninth Circuit held that the policy did not cover damages resulting from intentional acts and the intent of the insured to cause the damage was not an issue. Id. at 1364-65 (citing Merced Mutual, 213 Cal.App.3d at 50, 242 Cal.Rptr. 454). The court stated that "Chamberlain's refusal to share the alleged quasi-community property with Mackay should not be considered accidental merely because he did not intend Mackay to be hurt by his intentional acts. The sundering of the relationship ... remains the crucial act for coverage purposes." Id. at 1365. Similarly, the intentional act of Mrs. Salahutdin in removing the string remains the "crucial act" in the present case. Mrs. Salahutdin intended her action. She claims that she didn't intend to trespass because she thought it was her land. But, that doesn't change the fact that the damage was the result of a deliberate and intentional act. Her motive or rationale for acting in this manner is irrelevant. Her action cannot be considered accidental merely because she did not intend to harm the Alcantaras.
The Salahutdins rely on cases which discuss the intentional acts exclusionary clause or the statutory prohibition against insurance for intentional acts, California Insurance Code Section 533. However, the intentional acts exclusion and Section 533 have not been interpreted in the same manner as coverage provisions which only cover accidents. See Chamberlain, 931 F.2d at 1365-66; American Guarantee & Liability Ins. Co. v. Vista Medical Supply, 699 F.Supp. 787, 789-90 (N.D.Cal.1988); Dyer, 210 Cal.App.3d at 1548-50, 259 Cal.Rptr. 298; Merced Mutual, 213 Cal.App.3d at 46, 242 Cal.Rptr. 454; Royal Globe, 181 Cal.App.3d at 537, 226 Cal. Rptr. 435; but see Mullen, 73 Cal.App.3d at 169-71, 140 Cal.Rptr. 605. In Chamberlain, the Ninth Circuit stated:
California courts distinguish between situations in which the dispute focuses on whether a particular loss falls within a policy's coverage and those in which the dispute focuses on the applicability of an exclusionary clause to conduct concededly covered by the policy.
Chamberlain, 931 F.2d at 1365-66 (citing Giddings v. Industrial Indem. Co., 112 Cal. App.3d 213, 218, 169 Cal.Rptr. 278 (1980)). Furthermore, a coverage provision may be more restrictive than Section 533. Vista Medical Supply, 699 F.Supp. at 790 (citing Fresno Economy Import Used Cars, Inc. v. United States Fidelity & Guar. Co., 76 Cal. App.3d 272, 280, 142 Cal.Rptr. 681 (1977)). Thus, cases interpreting the intentional acts exclusion or Section 533 are inapplicable to the present issue which concerns the scope of the coverage clause. Accordingly, Gray, 65 Cal.2d at 267, 54 Cal.Rptr. 104, 419 P.2d 168 (exclusionary clause), Meyer v. Pacific Employers Ins. Co., 233 Cal.App.2d 321, 43 Cal. Rptr. 542 (1965) (exclusionary clause), and Firco, Inc. v. Fireman's Fund Insurance Company, 173 Cal.App.2d 524, 343 P.2d 311 (1959) (exclusionary clause), cited by the Salahutdins, and cases interpreting Section 533 do not apply to this case.
Meyer and Firco are further distinguishable because the insurance policies in those cases were written to cover the very activity which caused the damage. In Meyer, the insured was a waterwell driller and the policy covered damages arising out of their drilling activities. Meyer, 233 Cal.App.2d at 327-28, 43 Cal.Rptr. 542. In Firco, the insureds were loggers and the policy covered damages arising out of their logging operations. Firco, 173 Cal.App.2d at 526-27, 343 P.2d 311. The damages complained of in Meyer arose out of drilling activities and the damages complained of in Firco arose out of logging activities. Thus, the policies were written to cover the very acts for which the insured was being sued. See Meyer, 233 Cal.App.2d at 328, 43 Cal.Rptr. 542. That is not the case in this action. Thus, Meyer's and Firco's applicability are further reduced.
This Court follows Merced Mutual, Commercial Union, Royal Globe, and Chamberlain, which hold that an insurance coverage provision which covers "damages arising out of an accident" does not cover acts intended by the insured, regardless of whether the *1313 insured intended the resulting damage. The Court finds that Mrs. Salahutdin intended to remove the string from her address pole. The Court also finds that Mrs. Salahutdin knew that the string was being used to align a fence on land whose ownership was in dispute. She took all of her actions deliberately and intentionally. Therefore, the damages arising from Mrs. Salahutdin's action are not covered under the terms of the Salahutdins' homeowners policy. Accordingly, the Court GRANTS Allstate's motion for summary judgment on the declaratory relief claim.

II. Bad Faith Claim

The Salahutdins have cross-complained for bad faith. They claim that Allstate (1) breached the duty to defend; (2) unreasonably denied coverage; (3) did not adequately investigate the Salahutdins' claim; and (4) did not timely respond to the tender of the defense. In light of the Court's disposition of Allstate's declaratory relief claim, there is no merit to the allegations that Allstate breached the duty to defend or unreasonably denied coverage. Marglen Industries, Inc. v. Aetna Casualty and Surety Company, 4 Cal.App.4th 414, 5 Cal.Rptr.2d 659 (1992) (determination that there was no coverage under the policy is fatal to bad faith theories claiming wrongful denial of a defense or indemnification). In addition, the Salahutdins' bad faith claims based on an inadequate investigation must fail because there is no coverage under the policy. Murray v. State Farm Fire & Casualty Co., 219 Cal.App.3d 58, 65-66, 268 Cal.Rptr. 33 (1990) (even if insurance company inadequately investigated claim, fact that investigation yielded correct conclusion precludes bad faith claim).
The Salahutdins' last claim is that Allstate unreasonably delayed its determination of coverage. The court in Murray stated in dicta that "in unusual circumstances," claims of unreasonable delay may state a cause of action for bad faith even if there is no coverage under the policy. Murray, 219 Cal.App.3d at 65-66 & n. 5, 268 Cal.Rptr. 33; but see Healy Tibbitts Constr. Co. v. Ins. Co. of North America, 679 F.2d 803, 808 (9th Cir.1982). However, the parties fail to cite any case in which a court has found a valid bad faith claim when there is no coverage under the policy. Furthermore, the Court, in its independent research of California insurance law has also been unable to find such a case. In fact, it appears that courts which have found that coverage does not exist under an insurance policy have uniformly rejected the insureds' claims of bad faith. See, e.g., Marglen, 4 Cal.App.4th 414, 5 Cal. Rptr.2d 659; Murray, 219 Cal.App.3d at 66, 268 Cal.Rptr. 33; Healy Tibbitts, 679 F.2d at 808.
In addition, the Court finds that the delay in this case was not so "unusual" as to give rise to bad faith liability. The Salahutdins tendered the defense of the Alcantaras' cross-complaint to their agent on May 21, 1991. The agent forwarded the claim to the claims office. On August 2, 1991, the claims office notified the Salahutdins that Allstate was unable to accept their tender of a defense without the assistance of coverage counsel. On October 24, 1991, coverage counsel concluded that coverage did not exist. This appears to be the normal chain of events when a claim is denied. In light of the potential liability for bad faith, it is not unreasonable for an insurance company to seek an independent opinion before rejecting a tender of defense or denying coverage. Furthermore, the legal issue presented in this case is not entirely settled in California. Compare Commercial Union Ins. Co. v. Superior Court, 196 Cal.App.3d 1205, 1208, 242 Cal.Rptr. 454 (1987) with Mullen v. Glens Falls Ins. Co., 73 Cal.App.3d 163, 169-71, 140 Cal.Rptr. 605 (1977); see also Kornblum, Kaufman & Levine, Cal. Prac. Guide: Bad Faith (TRG 1990), §§ 8:97.1-8:97.3. Certainly, it is not unreasonable for this chain of events to take five months. Finally, the Salahutdins fail to show how they have been harmed by this delay in light of the fact that there is no coverage under the insurance policy. See Chamberlain, 931 F.2d at 1363. Accordingly, the Court GRANTS Allstate's motion for summary judgment on the bad faith claim. However, if defendants are able to find authority which states that six months is an unreasonably long delay that gives rise *1314 to a claim for bad faith, the Court will reconsider its ruling on the bad faith claim.

CONCLUSION
In accordance with the foregoing, the Court GRANTS Allstate's motions for summary judgment on the declaratory relief claim and on the bad faith counter-claim.
IT IS SO ORDERED.
NOTES
[1] The Alcantaras are defendants in this action and in the underlying suit.
[2] The parties also dispute whether the damages claimed constitute "bodily injury" or "property damage" as defined under the policy. This Order does not address those issues in light of the Court's ruling that there is no coverage under the policy because the claimed damage does not arise from an "accident."