[No. E046531. Fourth Dist., Div. Two. Jan. 26, 2010.]

FIRE INSURANCE EXCHANGE, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent;
KENNETH BOURGUIGNON et al., Real Parties in Interest.

COUNSEL

Horvitz & Levy, Barry R. Levy, Karen M. Bray; Leist Law Group, Jeffrey J. Leist and Eric N. Riezman for Petitioner.

No appearance for Respondent.

Cadden & Fuller, Thomas H. Cadden, Ignacio J. Lazo and Charlene A. Busch for Real Parties in Interest.

OPINION

**McKINSTER, Acting P. J.**—Building a structure that encroaches onto another's property is not an accident even if the owners acted in the good faith but mistaken belief that they were legally entitled to build where they did. Because their homeowners policy did not provide coverage for nonaccidental occurrences, the owners' insurer had no duty to defend when the owners were sued by the adjoining landowner as a result of the encroachment. Accordingly, the owners' insurer was entitled to summary judgment in the action for breach of contract and bad faith brought by the owners. We therefore grant the insurer's petition for writ of mandate and direct that the superior court grant its motion.

## FACTS

Real parties in interest, Kenneth and Dorothy Bourguignon, owned property in Big Bear adjoining the Leach property. In 1984, Louise Leach granted them an access easement over a five-and-one-half-foot-wide portion of her property that bordered theirs. After their property suffered earthquake damage, the Bourguignons wanted to renovate and rebuild their residence and obtained Leach's signature on a "Lot Line Adjustment" application submitted to the City of Big Bear for the five-and-one-half-foot easement. The city approved the application on November 3, 1994, and a certificate of compliance was recorded in January 1995. The Bourguignons completed construction in October 1995, and a corrected certificate was recorded that month.

In 2002, Ron and Marie Parsons negotiated to purchase the Leach property and subsequently found that the Lot Line Adjustment was a cloud on title. They obtained an assignment of any rights possessed by Leach and her two sons to contest its validity. The Parsonses then purchased the Leach property.

The Parsonses disputed the validity of the Lot Line Adjustment, asserting that Leach had conveyed a one-third interest in the property to her two sons in 1988 and the latter had not signed the Lot Line Adjustment application.

The Bourguignons sued the Parsonses for quiet title and adverse possession of this five-and-one-half-foot strip. The Parsonses cross-complained for quiet title, declaratory relief and fraud. They sought damages measured by the diminution in value of their property based on the cloud on title as well as punitive damages in addition to seeking quiet title and declaratory relief. In a second amended cross-complaint, the Parsonses alleged that the Bourguignons knew that their newly built residence encroached on the Leach property and that they had misrepresented the facts to Leach to obtain her approval. The Parsonses added a prayer for a mandatory injunction to require the removal of the structure and for attorney fees and punitive damages.

The Bourguignons tendered their defense to petitioner Fire Insurance Exchange (Fire Insurance), which had issued a homeowner policy to them in 1999. Fire Insurance refused to defend the suit on the ground that it owed no duty to defend because it had no potential liability under the policy.

The Bourguignons sued Fire Insurance for breach of the insurance contract and bad faith. Fire Insurance moved for summary judgment on the ground that the Parsonses' claims did not present any potential basis for recovery. Specifically, it argued that any losses to the Parsonses resulted from the Bourguignons' intentional act of building over the lot line and, thus, was not the result of an "accident." Secondly, the Parsonses' claims for equitable relief did not constitute damages covered by the policy. Finally, the Parsonses did not allege any property damage within the meaning of the policy because they did not allege any "physical injury to or destruction of" tangible property.

The trial court denied summary judgment finding that there was a triable issue of fact whether the Bourguignons' intentional act of constructing their home could constitute an "accident" because they did not intend to encroach but acted under the mistaken belief they had legally acquired title to the disputed property. It also found that the Parsonses' trespass claim could support a claim for damages even though they did not pray for damages and, lastly, that the Parsonses' cross-complaint alleged a tangible fee simple interest in their property.

## DISCUSSION

Our analysis begins with the principles that determine an insurer's duty to defend. The potential for coverage creates the insurer's duty to defend. The insurer "must defend a suit which potentially seeks damages within the coverage of the policy." (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168], italics omitted.) The insurer is excused from its defense obligation only when "the third party complaint

can by no conceivable theory raise a single issue which could bring it within the policy coverage." (*Id.* at p. 276, fn. 15; see also *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) The insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. (*Lyons v. Fire Ins. Exchange* (2008) 161 Cal.App.4th 880, 885 [74 Cal.Rptr.3d 649].) Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. Even a single claim that does not predominate, but for which there is potential coverage, will trigger the insurer's duty to defend. (*Ibid.*)

Thus, we first look to the terms of the policy. The policy in question covers "those damages which an insured becomes legally obligated to pay because of . . . property damages . . . resulting from an occurrence to which this coverage applies." An "occurrence" is defined in turn as "an accident including exposure to conditions which results during the policy period in . . . property damage."

Fire Insurance contends that the Bourguignons' action in building a structure at a specified location is not an accident but an intentional act so that there is no coverage. The Bourguignons counter that they were mistaken that they owned the property where they built the house so that the encroachment on the Parsonses' property was an accident.

■ "Accident" is given a commonsense interpretation that it is an unintentional, unexpected, chance occurrence. (*St. Paul Fire & Marine Ins. Co. v. Superior Court* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5].)

An accident does not occur when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage. (*Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 51 [261 Cal.Rptr. 273].) *Merced* explains the distinction by the following examples: When a driver intentionally speeds and as a result, negligently hits another car, the speeding is an intentional act. However, the act directly responsible for the injury—hitting the other car—was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident. This situation is distinct from an instance where a driver speeds and deliberately hits the other car.

Where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury. (*Ray v. Valley Forge Ins. Co.* (1999) 77 Cal.App.4th 1039, 1045–1046 [92 Cal.Rptr.2d 473]; see also *Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 810 [26 Cal.Rptr.2d 391] (*Collin*).) The insured's subjective intent is irrelevant. (*Quan v. Truck Ins.*

*Exchange* (1998) 67 Cal.App.4th 583, 598 [79 Cal.Rptr.2d 134] (*Quan*); *Lyons v. Fire Ins. Exchange, supra*, 161 Cal.App.4th 880.)[1] Indeed, it is well established in California that the term "accident" refers to the nature of the act giving rise to liability; not to the insured's intent to cause harm. (*Collin*, at p. 810.)

In several cases pertinent to our analysis, the courts have refused to find an accident in circumstances where the insured committed an act based on a mistaken belief in the legal right to engage in that conduct. Thus, in both *Quan* and *Lyons* a third party claimed the insured committed some act of sexual assault and the insured relied on a mistaken belief that there was consent. Because the insured intended to commit the act, the occurrence was not an accident even if the insured believed it was consensual. (*Quan, supra*, 67 Cal.App.4th at p. 598; *Lyons v. Fire Ins. Exchange, supra*, 161 Cal.App.4th 880.) Similarly in *Merced Mutual Ins. Co. v. Mendez, supra*, 213 Cal.App.3d 41, acts of oral copulation and attempted oral copulation were held not to be accidents notwithstanding insured's mistaken belief that victim consented. (See also *J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1014 [278 Cal.Rptr. 64, 804 P.2d 689] [homeowners policy as a matter of law did not provide coverage for child molestation regardless of lack of intent to harm].) Our Supreme Court has recently reaffirmed this principle in *Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302 [97 Cal.Rptr.3d 298, 211 P.3d 1083], where it concluded that "an insured's unreasonable belief in the need for self-defense does not turn the resulting purposeful and intentional act of assault and battery into 'an accident' within the policy's coverage clause."[2] (*Id.* at p. 317.)

The principle that an insured's mistake of fact or law does not transform a purposeful act into an accident has been applied in situations other than those involving sexual contact and assault and battery. In *Collin, supra*, 21 Cal.App.4th 787, a misunderstanding of legal rights did not turn conversion of property into an accident. (See also *Swain v. California Casualty Ins. Co.*

---

[1] The decision in *State Farm Fire & Casualty Co. v. Superior Court* (2008) 164 Cal.App.4th 317, 320–321 [78 Cal.Rptr.3d 828], seems to stand in variance to this rule. There, the insured picked up a man and tried to throw him into a swimming pool. The man fell short of the pool and broke his clavicle. The appellate court concluded that the injury was caused by an accident, reasoning that the act directly responsible for the injury—throwing too softly so as to miss the water, was an unforeseen or undesigned happening or consequence and was thus fortuitous. The conclusion reached in this case can perhaps be harmonized, if at all, when it is viewed in the context of the examples given in the *Merced* case. Like the speeding driver who intended to speed but not to hit another car, the insured intended to throw the other man but did not intend for him to hit the concrete.

[2] We do not believe it is significant for our purposes that the holding in *Delgado* was limited to the insured's unreasonable, subjective belief in the need for self-defense. The injured third party had alleged an unreasonable belief only, and, in any case, liability would not have attached to the insured's action if he had acted reasonably.

(2002) 99 Cal.App.4th 1 [120 Cal.Rptr.2d 808] [mistaken belief that acts were unlawful did not render wrongful eviction of tenant an accident]; *Lipson v. Jordache Enterprises, Inc.* (1992) 9 Cal.App.4th 151, 159 [11 Cal.Rptr.2d 271] [An employment termination, even if due to a mistake of fact, is an intentional act and the mistake of fact does not transform it into an accident that triggers an insurer's duty to defend.].) In surveying the then extant case authority, *Collin* located only one case that had departed from these principles—*Allstate Ins. Co. v. Vavasour* (N.D.Cal. 1992) 797 F.Supp. 785 (*Vavasour*).

*Vavasour* is one of three cases from the federal courts that interpret the term "accident" in the context of property disputes that more closely resemble the facts before us. The other decisions are *Allstate Ins. Co. v. Salahutdin* (N.D.Cal. 1992) 815 F.Supp. 1309, 1310 (*Salahutdin*) and *Bailey v. State Farm Ins.* Co. (N.D.Cal. 1992) 810 F.Supp. 267 (*Bailey*).

We will discuss these three cases in turn at some length because of their factual similarity, starting with *Salahutdin*.[3] The Salahutdins and their neighbors, the Alcantaras, disputed ownership of a strip of land between their respective properties. When the Alcantaras began to build a fence on the disputed land, they aligned the fence with a string tied to a post the Salahutdins believed they owned. Mrs. Salahutdin removed the string, acting on the belief that the neighbors were erecting a fence on her land. The Salahutdins initiated an action against the Alcantaras, who cross-complained for trespass and intentional infliction of emotional distress. The court rejected the Salahutdins' contention that their conduct constituted an accident under their insurance policy because they believed they owned the disputed lands, and lacked any intention to cause property damage or emotional distress. The court stated: "[T]he intentional act of Mrs. Salahutdin in removing the string remains the 'crucial act' in the present case. Mrs. Salahutdin intended her action. She claims that she didn't intend to trespass because she thought it was her land. But, that doesn't change the fact that the damage was the result of a deliberate and intentional act. Her motive or rationale for acting in this manner is irrelevant. Her action cannot be considered accidental merely because she did not intend to harm the Alcantaras." (*Salahutdin, supra*, 815 F.Supp. at p. 1312.)

In contrast, in *Vavasour*, the Vavasours and their neighbor owned adjoining properties with no boundary fences or markings. The neighbor erected a boundary fence across land the Vavasours had long used as a driveway. When the Vavasours sued their neighbor, he cross-complained for trespass, alleging the Vavasours had been driving on his land. The court determined that this allegation triggered the possibility of coverage under the Vavasours' policy,

---

[3] *Salahutdin* was decided before *Vavasour* but was published after that decision.

reasoning that the trespass claim rested on the Vavasours' "routine use of their driveway over a period of years," without "any inkling that [it] did not lie entirely on their own property," and that under California law, trespass can occur through negligent conduct. (*Vavasour, supra*, 797 F.Supp. at p. 788.) The court thus concluded that "an absence of intent to trespass . . . may render the alleged trespass 'accidental.' " (*Ibid.*) In so concluding, it distinguished *Salahutdin* on the ground that the insured there had known there was a property dispute when she removed the string.

In *Bailey, supra*, 810 F.Supp. 267, an arguably different result was reached by the same court that decided *Vavasour*. The Baileys owned property subject to a nonexclusive easement for use as a roadway. When the Baileys tried to improve a portion of the roadway they believed they owned by dumping rock on it and edging it with railroad ties, neighbors, who claimed rights to the easement, sued them for damages to it. The court concluded that the Baileys' conduct did not constitute an accident because they had acted intentionally, notwithstanding their innocent motive and belief that they owned the affected parts of the roadway. It distinguished *Vavasour* on the grounds that that case involved a trespass claim and that the Baileys supposedly had adequate notice of a potential property dispute through the terms of their deed, but these distinctions can only be characterized as strained.

Although none of these three decisions are binding on this court, we find the reasoning of *Salahutdin* and *Bailey* to be the more persuasive and are in accord with the principle in California that the term "accident" refers to the nature of the conduct itself rather than to its consequences. *Vavasour* stands out in singular contrast to the prevailing rule. (*Collin, supra*, 21 Cal.App.4th at p. 812.) As we have discussed, any suggestion in *Vavasour* that the harm occasioned by intentional conduct may constitute an accident when the person engaged in the conduct is unaware of its wrongful character is contrary to the holdings of our state courts. (See, e.g., *Quan, supra*, 67 Cal.App.4th at p. 599 [no accident alleged where "[t]he acts asserted to give rise to the underlying claimant's injuries were deliberate, regardless of whether any harm was intended or expected to come of them"].)

Also instructive is *Modern Development Co. v. Navigators Ins. Co.* (2003) 111 Cal.App.4th 932 [4 Cal.Rptr.3d 528], where the insured owned a swap meet and was sued by a disabled person for failing to comply with accessibility requirements because he was unable to access a restroom. The insured filed suit against its insurer for breach of contract after the insurer refused to defend. The policy defined an "occurrence" to mean "accident." The trial court granted summary judgment in favor of the insurer, concluding that there was no "occurrence" that triggered coverage. The Court of Appeal affirmed, stating that the disabled person's alleged injuries were caused by the architectural configuration of the swap meet and the owner's alleged failure to

remove architectural barriers, not by an accident. "The Swap Meet intended for the bathrooms to be configured as they were. The result is that the incident involving [the disabled person] is not a covered event." (*Id.* at p. 943.)

■ So too here, the Bourguignons intended to build the house where they built it. Accepting their contention that they believed they owned the five-and-one-half-foot strip of land and had the legal right to build on it,[4] the act of construction was intentional and not an accident even though they acted under a mistaken belief that they had the right to do so. The Bourguignons insist that their engineer failed to obtain and include an executed grant deed in the Lot Line Adjustment application resulting in their failure to obtain the legal right to build where they did. They argue that this failure was merely an unintended aspect in the causal series of events leading to the encroachment. However, the reasons for their failure to obtain title is irrelevant to the determination whether the act in locating the building where they did can be characterized as an accident. There was no unexpected and unintended event between the intentional construction of the building and the encroachment. Just like Mrs. Salahutdin or the Baileys, they acted under a mistaken belief that they owned the property and had the legal right to take the action they did. Just like the insureds in *Quan* or *Lyons*, who acted under a mistaken belief that there was consent, the Bourguignons' mistaken belief in their legal right to build does not transform their intentional act of construction into an accident. Accordingly the trial court erred in denying summary judgment because, based on the uncontested facts, there is no potential for coverage.

In light of the court's ruling that there is no coverage because the claimed damage does not arise from an "accident," the court need not consider the additional issue whether the Parsonses have alleged property damage.

---

[4] The Bourguignons have moved to augment the record and to dismiss the petition based upon the superior court's decision in the underlying encroachment case, *Bourguignon v. Parsons* (Super. Ct. San Bernardino County, 2009, No. SCVSS110419). In that case, the court found that the encroachment was not a willful or intentional act by the Bourguignons to take a portion of the adjoining property but rather appeared to be the result of an inadvertent error or mistake by them and their architect. We deny the motion to augment, however, because the decision in the underlying action was not before the court when it ruled on the summary judgment motion. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085].) Similarly, reviewing courts generally do not take judicial notice of matters not before the trial court in the absence of exceptional circumstances. (*Ibid.*) The Bourguignons believe that the decision in the encroachment case is dispositive here. We disagree, and point out that we have always assumed for the purposes of this case that the Bourguignons acted in the good faith but mistaken belief that they had the legal right to build in the location they did. Therefore, there are no exceptional circumstances that compel us to exercise our discretion to take judicial notice.

## DISPOSITION

Let a peremptory writ of mandate issue directing the Superior Court of San Bernardino County to set aside its order denying petitioner's motion for summary judgment and to issue a new and different order granting that motion.

The motion to augment and dismiss is denied.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

Petitioner to recover costs.

Gaut, J., concurred.

**MILLER, J., Dissenting.**—I respectfully dissent. I would affirm the trial court's denial of Fire Insurance Exchange's (Fire Insurance) motion for summary judgment.

## DISCUSSION

### A. *Standard of Review*

The independent standard of review is applied to the trial court's order denying Fire Insurance Exchange's (Fire Insurance) motion for summary judgment. (*Baroco West, Inc. v. Scottsdale Ins. Co.* (2003) 110 Cal.App.4th 96, 99 [1 Cal.Rptr.3d 464] (*Baroco*) [Fourth Dist., Div. Two].) Specifically, the record is independently examined " 'in order to determine whether triable issues of fact exist to reinstate the action. [Citation.]' [Citations.]" (*Principal Life Ins. Co. v. Peterson* (2007) 156 Cal.App.4th 676, 681 [67 Cal.Rptr.3d 584].) This court analyzes the record following the same three-step process as the trial court. First, the court identifies the issues raised by the pleadings. Second, the court determines whether Fire Insurance showed that the Bourguignons could not prevail on any theory raised by the pleadings. Third, if Fire Insurance has met its burden, then the court considers whether the Bourguignons have raised a triable issue of fact. (*Ibid.*) In reviewing the order, this court must strictly construe Fire Insurance's supporting documents, while liberally construing the Bourguignons' supporting documents. (*Baroco*, at p. 99.) All doubts must be resolved in the Bourguignons' favor. (*Ibid.*)

## B. *Analysis*

### 1. *Step One: Identifying Issues Raised by the Pleadings*

#### a) *Complaint*

In the Bourguignons' first amended complaint against Fire Insurance, the Bourguignons alleged that Fire Insurance breached its contract with the Bourguignons. Specifically, the Bourguignons alleged that Fire Insurance breached its contract by (1) not promptly providing the Bourguignons with a copy of their policy; (2) failing to promptly conduct a fair and complete investigation into the facts and circumstances of the claims asserted against the Bourguignons; (3) refusing to provide a defense for the Bourguignons; (4) not allowing the Bourguignons to choose their own attorney; and (5) limiting the payment of attorney's fees to $125 per hour. In regard to the specific policy language, the Bourguignons contended that Fire Insurance agreed to defend them against allegations of "property damage" and "personal injury"; the Bourguignons claimed that the Parsonses' cause of action for trespass (encroaching on the Parsonses' property) qualified as an action for "property damage" and "personal injury."

#### b) *Motion for Summary Judgment*

In its motion for summary judgment, Fire Insurance argued that it did not breach its contract with the Bourguignons because it had no duty to defend them. In its first argument, Fire Insurance asserted that it has no duty to defend against a suit that cannot result in an award of damages. Fire Insurance claimed that the Parsonses' requests for equitable relief did not constitute damages. Second, Fire Insurance asserted that none of the Parsonses' causes of actions concerned "bodily injury" or "property damage." Fire Insurance argued that an interest in an easement or leasehold did not constitute tangible property for purposes of "property damage." Third, Fire Insurance asserted that the policy only covered property damage caused by accidents, and the Bourguignons' encroachment was intentional, i.e., not an accident.

### 2. *Step Two: Fire Insurance's Burden*

I now analyze whether Fire Insurance has met its burden of showing that the Bourguignons failed to allege a triable issue of fact regarding Fire Insurance's purported breach.

#### a) *Relevant Law*

"[W]hen the case turns on the interpretation or application of the terms of an insurance policy, [the court] review[s] the terms of the policy to determine

whether the insurer owed the insured a duty to defend. A duty to defend arises when the claim creates any potential for indemnity or coverage. 'The determination of whether the duty to defend arises is made by comparing the terms of the policy with the allegations of the complaint and any known extrinsic facts, and any doubt as to whether the facts create a duty to defend is resolved in favor of the insured. [Citation.]' " (*Baroco, supra,* 110 Cal.App.4th at p. 100, fns. omitted.)

### b) *Remedy*

Fire Insurance contends that it does not have a duty to defend against equitable claims, and therefore, it could not have breached its contract because the Parsonses only sued the Bourguignons for equitable relief. I disagree.

" 'Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages.' [Citation.] The subject matter of an action and the issues involved are determinable from the facts alleged rather than from the title of the pleading or the character of damage recovery suggested in connection with the prayer for relief. [Citations.]" (*Buxbom v. Smith* (1944) 23 Cal.2d 535, 542 [145 P.2d 305]; see also *Weber v. Superior Court* (1945) 26 Cal.2d 144, 148 [156 P.2d 923] [" 'The subject matter of an action and the issues involved are determinable from the facts pleaded, rather than from the title or prayer for relief.' "].)

When a party constructs a permanent building, which encroaches upon the land of another, the trespass is considered permanent, and causes of action for damages and injunctive relief accrue. (*Troeger v. Fink* (1958) 166 Cal.App.2d 22, 26 [332 P.2d 779].) "Indeed, with respect to trespass, the law is clear that '. . . damages may be recovered for annoyance and distress, including mental anguish, proximately caused by a trespass.' [Citation.]" (*Gonzales v. Personal Storage, Inc.* (1997) 56 Cal.App.4th 464, 475 [65 Cal.Rptr.2d 473].)

The Parsonses sued the Bourguignons for trespass, i.e., encroaching on their property. Based upon the facts alleged, the Parsonses could be awarded damages. Therefore, Fire Insurance is not entitled to summary judgment on this point.

Moreover, in their prayer for relief on the trespass action, the Parsonses requested (1) an injunction, (2) punitive damages, (3) costs and attorney's fees, and (4) "other relief the court finds just and proper." Consequently, although the prayer for relief is not controlling, I find further support for my opinion in the Parsonses' prayer, because the Parsonses did not foreclose on

the possibility of obtaining an award of legal damages, e.g., "other relief the court finds just and proper."

Additionally, while the Parsonses allege an action for trespass, I note that a large portion of the trespass action also alleges that the Bourguignons engaged in fraud. To the extent that the cause of action could be separated into two causes of action, one for trespass, and a second for fraud, I note that legal damages are also available following a finding of fraud. (Civ. Code, § 1709.)

### c) *Property Damage*

Fire Insurance asserted that none of the Parsonses' causes of actions concerned "bodily injury" or "property damage." Therefore, Fire Insurance argued that it did not breach its duty to defend the Bourguignons because the Parsonses' lawsuit does not involve bodily injury or property damage. I disagree.

The insurance policy obligates Fire Insurance to "pay those damages which an insured becomes legally obligated to pay because of bodily injury, property damage or personal injury resulting from an occurrence to which this coverage applies. . . . [¶] . . . [¶] At [Fire Insurance's] expense and with attorneys of [its] choice, [it] will defend an insured against any covered claim or suit." The insurance policy defines "property damage" as "physical injury to or destruction of tangible property covered by this policy and resulting loss of use." " '[T]angible property' . . . is meant to exclude intangible economic interests and property rights. It has been defined in its plain and ordinary sense as limited to property having physical substance apparent to the senses, including real estate. [Citations.]" (*Borg v. Transamerica Ins. Co.* (1996) 47 Cal.App.4th 448, 457 [54 Cal.Rptr.2d 811] (*Borg*).)

In the Parsonses' second amended cross-complaint, they allege that they "have been damaged by being denied [(1)] clear title, and [(2)] the use and enjoyment [of] the property they purchased . . . ." The Parsonses further allege that they "will be irreparabl[y] harmed by the continued existence of the Bourguignon[s'] home on their property and will be denied the full use and value thereof because it cannot be developed, sold, or improved with [the] encroachment and cloud on title."

I interpret the Parsonses' second amended cross-complaint as alleging that the Parsonses have suffered a direct physical encroachment onto their real property; and the physical encroachment is an injury to their property, which has resulted in a loss of use. (See *Borg, supra*, 47 Cal.App.4th at pp. 457–458 [reaching a similar conclusion].) Therefore, in my opinion, the Parsonses'

lawsuit involves "property damage." Accordingly, Fire Insurance is not entitled to summary judgment on this point.

### d) *Accident*

Fire Insurance asserts that the insurance policy only covered property damage caused by accidents, and the Bourguignons' encroachment was intentional, i.e., not an accident. Therefore, Fire Insurance contends that it is not bound to defend the Bourguignons. I disagree.

"Under California law, the word 'accident' in the coverage clause of a liability policy refers to the conduct of the insured for which liability is sought to be imposed on the insured. [Citations.]" (*Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302, 311 [97 Cal.Rptr.3d 298, 211 P.3d 1083] (*Delgado*).) "[A]n injury-producing event is not an 'accident' within the policy's coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor. [Citations.]" (*Id.* at pp. 311–312.) For example, " '[w]hen a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury—hitting the other car—was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident.' [Citations.]" (*Id.* at p. 316.)

"This concept of fortuity is basic to insurance law. [Citation.] Insurance typically is designed to protect against contingent or unknown risks of harm [citation], not to protect against harm that is certain or expected. [Citation.] In other words, such insurance generally protects against risks of loss rather than certainties of loss. [Citations.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 17 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

The Bourguignons may have acted "intentionally," in that their act of building their house was knowing and voluntary; however, there is ample support in the record for a finding that their conduct was executed without the objective of encroaching on the Leaches'/Parsonses' property. The Parsonses' second amended complaint alleges that the Parsonses became aware of the cloud on their title in April 2003, when the Parsonses bought the property from the Leaches. However, the Parsonses allege that they did not become aware of the encroachment until May 2004, because "[a]ll building records, plans, and public notices indicate that the structure on [the Bourguignons' property] is on the property line, not over it." If the Parsonses knew of the cloud on the title, but it was not clear for a year that the Bourguignons' house was on the Parsonses' property, then there is reason to believe that the Bourguignons also were unaware that their home was on the Parsonses'

property. Consequently, the record provides support for the conclusion that the Bourguignons did not have the objective to encroach on the Parsonses' property, and therefore, the encroachment was an accident because the Bourguignons' objective was to build on their own property, and that objective was allegedly not accomplished. (See *A.B.C. Builders, Inc. v. American Mut. Ins. Co.* (1995) 139 N.H. 745, 748–750 [661 A.2d 1187] [reaching a similar conclusion regarding an encroachment being an accident]; see also *Haynes v. American Cas. Co.* (1962) 228 Md. 394, 399 [179 A.2d 900] [same].)

In sum, there is support in the record for the conclusion that the Bourguignons' objective was to build on their own property, i.e., not to encroach; therefore, I would affirm the trial court's ruling that Fire Insurance was not entitled to summary judgment on the issue of whether the encroachment constituted a covered occurrence under the policy.

The majority relies on the theory that a "mistake of fact" does not create an accident, and therefore, the Bourguignons' mistake regarding their property line does not make their encroachment an accident. I am not persuaded by the majority's reasoning. The Bourguignons' failure to take the proper precautions, e.g., conduct a thorough title search and/or conduct a property survey, which likely would have prevented the "mistake," does not prove that the Bourguignons' objective was to encroach on their neighbors' property. The Parsonses' allegations that (1) the Bourguignons sought to file a lot line adjustment; (2) the plans and permits showed the residence being built within the property lines; and (3) it took over a year for the Parsonses to discover the encroachment, negates, in my mind, an argument that the Bourguignons had an objective to build on the Parsonses' property. (See *Cross v. Zurich General Acc. & Liability Ins. Co.* (7th Cir. 1950) 184 F.2d 609, 611 [similar conclusion].)

As presented *ante*, our Supreme Court has explained that " '[w]hen a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury—hitting the other car—was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident.' [Citations.]" (*Delgado, supra,* 47 Cal.4th at p. 316.) In my opinion, the Bourguignons' construction of the house is akin to the speeding driver, i.e., it was done intentionally; however, the encroachment—the act directly responsible for the injury—was not intended or expected, and therefore the encroachment is akin to the act of hitting the other car.

I would not call the collision with the other car a "mistake of fact" because the speeding driver mistakenly believed that the other car was not there, or

mistakenly believed he would not strike the other car, et cetera. Rather, because the collision was not expected, it is labeled an accident; the same is true in the instant case—the encroachment was not expected, and therefore, it was an accident.

### e) *Conclusion*

In sum, I would affirm the trial court's denial of Fire Insurance's summary judgment motion because Fire Insurance has not negated the Bourguignons' claim for breach of contract.

A petition for a rehearing was denied February 22, 2010, and the petition of real parties in interest for review by the Supreme Court was denied April, 22, 2010, S180839.