Filed 4/14/22; Certified for Publication 5/5/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
DIVISION FOUR

| | |
|---|---|
| MARYAM GHUKASIAN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> AEGIS SECURITY INSURANCE COMPANY, <br><br> Defendant and Respondent. | B311310 <br><br> (Los Angeles County Super. Ct. No. 20STCV15761) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge. Affirmed.

Law Offices of Dale E. Washington, Dale E. Washington; The Ehrlich Law Firm and Jeffrey I. Ehrlich for Plaintiff and Appellant.

Selman Breitman, Sheryl W. Leichenger, Eldon S. Edson, and Laura R. Ramos for Defendant and Respondent.

## INTRODUCTION

Maryam Ghukasian sued Aegis Security Insurance Company (Aegis) for breach of contract, insurance bad faith, and declaratory relief after Aegis denied her tender of a lawsuit brought against her by her neighbors. The underlying lawsuit alleged Ghukasian graded land and cut down trees on her neighbors' property. The trial court granted Aegis's motion for summary judgment, holding Aegis had no duty to defend because Ghukasian's homeowner's policy did not provide coverage for nonaccidental occurrences. It explained that intentionally cutting trees on the neighbors' land, even if Ghukasian acted on the good faith but mistaken belief that the trees were on her land, is not an accident for purposes of insurance coverage.

Ghukasian appeals from the judgment, contending our Supreme Court's decision in *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Construction Co.* (2018) 5 Cal.5th 216 (*Liberty Surplus*) impliedly disapproved caselaw holding an intentional act is not an "accident," as the term is used in the coverage clause of a liability policy, even if the intentional act causes unintended harm. We decline to read *Liberty Surplus* in that fashion, and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. Ghukasian owns a home in Glendale, California. Ghukasian purchased a homeowner's policy from Aegis for the period between June 13, 2018 to June 13, 2019. In August 2018, she hired contractors to level land and clear trees on land she understood to be a part of her property. The land Ghukasian's contractor cleared and leveled was not owned by Ghukasian, however, but by Ghukasian's neighbors, Vrej and George Aintablian (collectively, the neighbors).

In February 2019, the neighbors sued Ghukasian and others, including the contractor, in what we will refer to as the underlying action. The complaint alleged two causes of action against Ghukasian: trespass and negligence. Both causes of action alleged the same facts: Ghukasian and her contractor "entered upon [the neighbors'] [p]roperty without [the neighbors'] consent," "made deep cuts . . . into a natural hill on [the neighbors' property]," "caused a natural swale located on [neighbors' property] to be filled with dirt[,]" which "prevented the flow of water in and through the swale," and "removed, cut down and carried off timber, trees, and underwood from [the neighbors' property]."

Ghukasian tendered the underlying action to Aegis. The policy provides coverage if a "suit is brought against [Ghukasian] for damages because of . . . property damage caused by an occurrence to which this coverage applies." An "occurrence" is defined in turn as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period in . . . [p]roperty damage." Aegis denied coverage for the underlying action on the ground it owed no duty to defend because the complaint alleged intentional (as opposed to accidental) conduct and various exclusions in the policy barred coverage.

Ghukasian sued Aegis for breach of the insurance contract, declaratory relief, and insurance bad faith. All three causes of action are based on Aegis's denial of Ghukasian's requested coverage of claims brought against her in the underlying action. Aegis moved for summary judgment on the ground it had no duty to defend Ghukasian in the underlying action as a matter of law and therefore, it did not breach the insurance contract. Aegis contended there was no coverage for the underlying action because it did not allege an "occurrence," as required for coverage, and it was excluded by various policy exclusions. The trial court agreed, explaining: Ghukasian's "mistaken belief as to

3

the boundaries of the property does not transform her intentional act [of hiring contractors to clear and level land] into an accident for the purposes of being covered as an 'occurrence' under the Policy." It also concluded the underlying action's allegations against Ghukasian "involved conduct excluded from coverage" under certain exclusions in the policy.

The trial court entered judgment in favor of Aegis. Ghukasian appeals from the judgment.

## DISCUSSION

### A.    Standard of Review and Duty to Defend Principles

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar, supra*, at p. 850.) Where summary judgment has been granted, we review the trial court's ruling de novo. (*Aguilar, supra*, at p. 860.) We affirm summary judgment where the moving party demonstrates that no triable issue of material fact exists and that it is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subds. (c), (f).) "Our review of the interpretation of an insurance contract on undisputed facts is also de novo." (*Albert v. Mid-Century Ins. Co.* (2015) 236 Cal.App.4th 1281, 1289 (*Albert*).)

"On summary judgment, '[t]o prevail [on the duty to defend issue], the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. Facts merely tending to show that the

4

claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales.' (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300.)" (*Albert, supra*, 236 Cal.App.4th at p. 1290.) "'[W]hen an insurer seeks summary judgment on the ground the claim is excluded, the burden is on the insurer to prove that the claim falls within an exclusion.' [Citation.]" (*Ibid*.) In contrast, an insured must prove its claim may fall within policy coverage, even when the insurer has moved for summary judgment. (*Ibid*.)

## B. The Undisputed Evidence Establishes Aegis Did Not Have a Duty to Defend

As discussed above, the policy at issue covers property damage resulting from an occurrence, which is defined as an accident. Relying on *Albert, supra,* 236 Cal.App.4th 1281, and *Fire Ins. Exchange v. Superior Court* (2010) 181 Cal.App.4th 388 (*Fire Exchange*), the trial court concluded Ghukasian's deliberate act of hiring contractors to clear and level the neighbors' land, which was ultimately cleared and leveled, constituted intentional conduct. That conduct, therefore, was not an accident within the meaning of the policy.

*Albert* is directly on point. There, the plaintiff's neighbor sued plaintiff for damage caused to his property when plaintiff erected an encroaching fence and pruned trees on his property. (*Albert, supra*, 236 Cal.App.4th at p. 1284.) After plaintiff tendered the claim to her insurer, and the insurer denied coverage, plaintiff sued the insurer for declaratory relief, breach of contract and bad faith. (*Ibid*.) The trial court granted the insurer's motion for summary judgment. (*Ibid*.) The Court of Appeal affirmed the judgment, holding the neighbor's claims against plaintiff "arise from nonaccidental conduct, outside the terms of the policy" (the policy defined an "occurrence" as an

5

"accident"). (*Ibid*.) The court explained: "[I]t is completely irrelevant that plaintiff did not intend to damage the trees, because she intended for them to be pruned. [Citations.] Moreover, it is undisputed that the contractor intended to cut the trees, and absolutely no facts exist, in the complaint or otherwise, indicating that some unforeseen accident (such as a slip of the chainsaw) caused the damage to the trees. In fact, it was always plaintiff's position that the trees had not been damaged or pruned excessively (and therefore were not subject to an accident), and that they had been cut in accordance with the city's brush clearance ordinance." (*Id.* at p. 1292.)

In reaching its conclusion, *Albert* relied on *Fire Exchange* for the proposition that "[w]hen an insured intends the acts resulting in the injury or damage, it is not an accident 'merely because the insured did not intend to cause injury. . . . The insured's subjective intent is irrelevant." (*Albert, supra*, 236 Cal.App.4th at p. 1291, quoting *Fire Exchange, supra*, 181 Cal.App.4th at p. 392.) In *Fire Exchange*, the court held there was no accident (and therefore, no insurance coverage) where the policyholders constructed a building that encroached on their neighbor's property. (*Fire Exchange, supra*, 181 Cal.App.4th at p. 390.) The court reasoned: "Accepting their contention that they believed they owned the five-and-one-half-foot strip of land and had the legal right to build on it, the act of construction was intentional and not an accident even though they acted under a mistaken belief that they had the right to do so." (*Id.* at p. 396.)[1]

_____

[1]     In holding the subjective intent of the insured is irrelevant for purposes of determining whether the insured's act was intentional, the *Fire Exchange* court explained the decision in *State Farm Fire & Casualty Co. v. Superior Court* (2008) 164 Cal.App.4th 317 (*Wright*) "seems to stand in variance to this rule." (*Fire Exchange, supra*, 181 Cal.App.4th at p. 393, fn. 1.) The *Fire Exchange* court explained: "[In *Wright*], the insured picked up a man and tried to throw him into a swimming pool. The man fell short of the pool and broke his clavicle. The

Like the situations in *Albert* and *Fire Exchange*, the complaint in the underlying action alleges harm from Ghukasian's intentional conduct. The leveling of land and cutting of trees were not unexpected or unforeseen events. (*See Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50 (*Merced*) "[An accident . . . is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces damage."]; see also *Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302, 308 ["In the context of liability insurance, an accident is '"an unexpected, unforeseen, undesigned happening or consequence from either a known or an unknown cause."' [Citation.]"].) To the contrary, it is undisputed Ghukasian specifically instructed her contractor to level certain land and cut trees, which is exactly what was done. Ghukaskian's mistaken belief about the boundaries of her property is irrelevant to determining whether the conduct itself—leveling land and cutting trees—was intentional. (See *Albert, supra*, 236 Cal.App.4th at p. 1291.)[2]

_____

appellate court concluded that the injury was caused by an accident, reasoning that the act directly responsible for the injury—throwing too softly so as to miss the water, was an unforeseen or undesigned happening or consequence and was thus fortuitous. The conclusion reached in this case can perhaps be harmonized, if at all, when it is viewed in the context of the examples given in [*Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41.] Like the speeding driver who intended to speed but not to hit another car, the insured intended to throw the other man but did not intend for him to hit the concrete." (*Fire Exchange, supra*, 181 Cal.App.4th at p. 393, fn. 1.) As acknowledged by *Ghukasian* in her opening brief, "[t]he response by other appellate courts to the *Wright* decision was distinctly negative."

2       We acknowledge Ghukasian's argument—that her act of cutting trees and clearing land was accidental because she

Ghukasian concedes *Albert* and *Fire Exchange* support the trial court's ruling. She contends, however, that our Supreme Court overruled those cases in *Liberty Surplus*. We are unpersuaded.

In *Liberty Surplus*, the United States Court of Appeals for the Ninth Circuit certified the following question to the California Supreme Court: "When a third party sues an employer for the negligent hiring, retention, and supervision of an employee who intentionally injured that third party, does the suit allege an 'occurrence' under the employer's commercial general liability policy?" (*Liberty Surplus, supra*, 5 Cal.5th at p. 216.) The court concluded it can, absent an applicable exclusion. (*Ibid*.)

In summarizing the meaning of the term "accident" in a liability insurance policy, the *Liberty Surplus* court began by stating "'[t]he term 'accident' is more comprehensive than the term 'negligence' and thus includes negligence.' [Citation]." *(Liberty Surplus, supra*, 5 Cal.5th at p. 221.) Because the causal sequence of events that led to the alleged injury began with the employer's negligence in hiring the employee, the *Liberty Surplus* court concluded the employer's alleged negligent hiring constituted an occurrence under the policy (i.e., an accident). (*Id*. at p. 225.) It explained the employee's molestation of the third party "may be deemed an unexpected consequence of [the employer's] independently tortious acts of negligence." (*Id*. at p.

unintentionally did so *on her neighbor's property*—is plausible. But it is inconsistent with settled law. A similar argument was raised by Justice Miller's dissenting opinion in *Fire Exchange*, but as discussed above, the majority rejected that argument. (See *Fire Exchange, supra*, 181 Cal.App.4th at p. 402 (dis. opn. of Miller, J.) ["[T]he record provides support for the conclusion that the [insureds] did not have the objective to encroach on the [other] property, and therefore, the encroachment was an accident because the [insureds'] objective was to build on their own property, and that objective was allegedly not accomplished."].)

229.) By contrast, here Ghukasian's intentional conduct (leveling land and cutting trees) was the *immediate* cause of the injury; there was no additional, independent act that produced the damage. *Liberty Surplus* is therefore distinguishable from the facts of this case. Moreover, *Liberty Surplus* contains no language indicating it intended to overrule prior caselaw holding intentional acts are not "accidents" merely because the insured did not intend to cause injury. To the contrary, it cited *Merced*'s definition of what constitutes an accident with approval, i.e., there is no accident when the insured performs a deliberate act "'*unless* some additional, unexpected, independent, and unforeseen happening occurs that produces the damage.'" (*Liberty Surplus, supra*, 5 Cal.5th at p. 225, quoting *Merced, supra*, 213 Cal.App.3d at p. 50 [emphasis added by *Liberty Surplus* court].)

We likewise reject Ghukasian's contention that because the underlying action alleges a cause of action for negligence, the complaint alleges an "occurrence" under *Liberty Surplus*. "The scope of the duty [to defend] does not depend on the labels given to the causes of action . . . ; instead it rests on whether the *alleged facts or known extrinsic facts* reveal a possibility that the claim may be covered by the policy." (*Cunningham v. Universal Underwriters* (2002) 98 Cal.App.4th 1141, 1148.) It is undisputed that both the trespass and negligence causes of action alleged the same facts: Ghukasian and her contractor entered the neighbors' property without consent and made deep cuts into the hill and removed timber, trees, and underwood from the property. There are no allegations or evidence that the neighbors' property was damaged by an accident (e.g., by inadvertently dropping equipment on the neighbors' property). Thus, although the underlying action alleges a cause of action for negligence, the factual allegations reflect intentional acts.

Because the undisputed evidence demonstrates the acts for which the neighbors seek to impose liability on Ghukasian were

not accidental, Ghukasian failed to carry her burden to show the neighbors' claims *may* fall within the scope of the policy. (*Montrose Chemical Corp. v. Superior Court, supra*, 6 Cal.4th at p. 300.) As Ghukasian is not entitled to coverage (and therefore, her claims for breach of contract and declaratory relief fail as a matter of law), her bad faith claim also fails. (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151 ["Where benefits are withheld for proper cause, there is no breach of the implied covenant [of good faith and fair dealing] [Citation]."]) Accordingly, the trial court did not err in granting Aegis's motion for summary judgment.[3]

---

3      Because we conclude the underlying action does not allege an "occurrence" under the policy, we need not address whether any of the policy's exclusions apply.

## DISPOSITION

The judgment is affirmed. Aegis is awarded its costs on appeal.

CURREY, J.

We concur:

MANELLA, P.J.

COLLINS, J.

11

Filed 5/5/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARYAM GHUKASIAN,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>  Defendant and Respondent. | B311310<br><br>(Los Angeles County Super. Ct. No. 20STCV15761) |

THE COURT:*

      The opinion in the above-entitled matter, filed on April 14, 2022, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be certified for publication in its entirety in the Official Reports and it is so ordered.

      There is no change in judgment.

\* CURREY, J.,              MANELLA, P.J.,              COLLINS, J.