Filed 4/28/15  Certified for publication 5/20/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SHELLY ALBERT, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MID-CENTURY INSURANCE COMPANY, <br><br> Defendant and Respondent. | B257792 <br><br> (Los Angeles County Super. Ct. No. EC060422) |

APPEAL from a judgment of the Superior Court of Los Angeles County. William D. Stewart, Judge.  Affirmed.

Law Offices of James T. Hudson and James T. Hudson for Plaintiff and Appellant.

Horvitz & Levy, Lisa Perrochet and Emily V. Cuatto for Defendant and Respondent.

Plaintiff Shelly Albert appeals from the judgment in favor of defendant Mid-Century Insurance Company after the trial court granted defendant's motion for summary judgment, and denied plaintiff's cross-motion for summary adjudication. Plaintiff sued defendant for breach of the insurance policy and insurance bad faith after defendant denied her tender of the defense of a lawsuit brought by nonparty Henri Baccouche. Plaintiff contends there were triable issues of fact relating to the duty to defend that precluded summary judgment, reasoning she met her burden of establishing the *potential* for coverage, and that defendant did not demonstrate there was no possibility of coverage. Finding that Mr. Baccouche's claims against plaintiff arise from nonaccidental conduct, outside the terms of the policy, we affirm the judgment below.

## FACTUAL BACKGROUND

The undisputed facts are these, as established by the parties' overlapping evidence: Plaintiff purchased a homeowners insurance policy from defendant in January 2008. The policy was in force on January 3, 2011, when plaintiff was sued by her neighbor, Mr. Baccouche, for damage plaintiff caused to his property when plaintiff erected an encroaching fence, and pruned nine mature olive trees on Mr. Baccouche's property. Plaintiff tendered the claim to defendant to provide a defense, and defendant denied plaintiff's claim. Plaintiff sued defendant, alleging causes of action for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing. Defendant filed a motion for summary judgment. Plaintiff filed a cross-motion for summary adjudication of the duty to defend the Baccouche action.

1. **The Insurance Policy**

The insuring clause of plaintiff's policy stated: "We will pay those damages which an insured becomes legally obligated to pay because of: [¶] . . . [¶] property damage resulting from an occurrence. [¶] At our expense and with attorneys of our choice, we will defend an insured against any suit seeking damages covered under [this section]. . . . [¶] We do not have any duty to defend

2

or settle any suit involving actual, alleged, threatened or declared . . . property damage not covered under this liability insurance. This applies whether or not the suit is groundless, false or fraudulent." (Boldface omitted.) The policy defines an "occurrence" as "an accident, including exposure to conditions, which occurs during the policy period, and which results in . . . property damage . . . during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence." (Boldface omitted.)

The policy also set forth a number of exclusions, including one for "Intentional acts," which the policy defined as "property damage . . . which is caused by, arises out of or is the result of an intentional act by or at the direction of the insured. By way of example this includes but is not limited to any intentional act or intentional failure to act by an insured, whether a criminal act or otherwise, where resulting injury or damage would be objectively expected to a high degree of likelihood, even if not subjectively intended or expected. This exclusion applies even if: [¶] . . . an insured mistakenly believes he or she has the right to engage in certain conduct; [¶] . . . [¶] . . . the injury or damage is different or greater or of a different quality than that intended or expected."

## 2. Mr. Baccouche's Lawsuit

On January 3, 2011, Mr. Baccouche filed a verified complaint alleging causes of action for trespass to real property and trees, abatement of private nuisance, declaratory relief, and for quiet title. The complaint alleged that Mr. Baccouche and plaintiff owned adjacent parcels of land which were subject to a reciprocal roadway easement providing both parcels (and another parcel not at issue here, belonging to another landowner) access to the main public road. Plaintiff erected a permanent fence over a portion of the roadway easement, which also intruded onto Mr. Baccouche's parcel. The fence enclosed a 644 square foot portion of Mr. Baccouche's land, which included a grove of nine mature olive trees. The trees had "full, substantial canopies that provided privacy, enhanced the value of [Mr. Baccouche's] property and defined the space, and provided

3

environmental services as well. To [Mr. Baccouche's] surprise, shock, disgust and anger, his trees had been severely damaged by [plaintiff] (presumably by her agents, servants, employees or independent contractors), whose actions in hacking, cutting and pruning the trees reduced them to a pitiable state." The complaint further alleged that plaintiff "willfully and maliciously damaged nine mature olive trees on [Mr. Baccouche's] property . . . by severely hacking cutting and pruning those trees so as to greatly reduce their canopies, foliage, limbs, etc., without permission . . . ." The "severe damage" to the trees "greatly diminished the aesthetic and monetary value of those trees . . . ." The complaint sought treble damages under Civil Code sections 733 and 3346.

Mr. Baccouche later filed a first amended complaint, newly alleging a cause of action for negligent damage to his trees. The amended complaint included new allegations that plaintiff "negligently cut and damaged [Mr. Baccouche's] olive trees by failing to ascertain that said trees were on [Mr. Baccouche's] property and that such cutting was in breach of the standard of care prescribed by any law or regulation that might be applicable to the trimming of trees for fire protection purposes in that the scope of the cutting and damaging of said trees far exceeded any legal requirements. [¶] [Plaintiff] had a duty to refrain from cutting and damaging [Mr. Baccouche's] olive trees and in so cutting said trees, not to exceed any legal requirements for fire protection purposes."

A second amended complaint, with substantially similar allegations, was filed on August 29, 2011.

**3.      Defendant's Investigation and Denial of Plaintiff's Claim**

In January 2011, after plaintiff was served with  Mr. Baccouche's complaint, she forwarded a copy of the complaint to defendant. On January 26, 2011, plaintiff provided a recorded statement concerning her claim to defendant. In the recorded statement, plaintiff asserted that the fence she erected was within her property line. Plaintiff did not believe any of her fencing encompassed Mr. Baccouche's property. As to the trees at issue in Mr. Baccouche's complaint,

4

plaintiff asserted that the trees were "boundary trees" and that the trunks of the trees essentially straddled the property line between Mr. Baccouche's and plaintiff's properties. Plaintiff told defendant that since she purchased her lot, she has been notified by the Los Angeles Fire Department to clear the area where the trees were located, as it was within 200 feet of her residence. She trimmed these same trees year after year, and Mr. Baccouche never told her not to, or that the trees belonged to him. Plaintiff believed in good faith that the trees were hers, and that she was required to trim them.

On May 13, 2011, Field Claims Manager Kristin Ferren denied plaintiff's claim, asserting that the allegations in both the initial and first amended complaint "do not meet the definition of occurrence resulting in bodily injury or property damage as defined by your policy." Ms. Ferren based her determination on the allegations in the pleadings, plaintiff's recorded statement, and the terms of the policy. Ms. Ferren also concluded that plaintiff's claim was barred by the exemption for intentional acts in the policy. Notwithstanding defendant's denial of coverage, Ms. Ferren encouraged plaintiff to forward to defendant any pertinent information that might affect its coverage determination.

On September 15, 2011, plaintiff forwarded a copy of the second amended complaint to defendant, with an email that stated that the trees were on the boundary line between her property and Mr. Baccouche's property, and that "I was noticed continually since purchasing the property in 2003 by the Fire Dept[.] to trim [the trees] annually per brush clearance requirements. Because these trees are in essence mutually owned by both of us, it constitutes property covered under my policy. Accordingly, [defendant] has an obligation under my policy of insurance to tender a defense on my behalf. [¶] [Mr. Baccouche's] entire complaint is false [and] outrageous . . . the trespass claim is ridiculous . . . in those boundary trees were enclosed by me, prior to any survey being done, based on a good faith belief that property encompassing the trees was mine . . . no intentional tort will lie."

5

The email also contended defendant's decision to deny her claim was "clearly error."

On September 27, 2011, defendant's lawyer advised plaintiff that defendant had not changed its position, and still maintained that it had no duty to defend or indemnify plaintiff, as there was "no potential" for coverage of the claims made against her under the policy, as plaintiff had admitted she purposefully erected the fence, and had intentionally cut Mr. Baccouche's trees. Defendant reasoned that because the conduct giving rise to Mr. Baccouche's claims was intentional, it was not an accident or occurrence within the meaning of plaintiff's insurance policy. The letter advised plaintiff to notify defendant of any additional facts which might bear on its coverage determination.

On June 21, 2012, plaintiff faxed a "demand for tender of defense" to defendant and defendant's counsel. The letter asserted that defendant's September 27, 2011 denial letter was "based on incorrect or incomplete information." She asserted that the trees at issue in Mr. Baccouche's lawsuit "are boundary line trees, half on my property and half on his adjoining land. [¶] Because these trees are half on my property, coverage of this claim should be picked up by [defendant]." The letter complained that defendant's insurance adjuster "declined to request . . . documentation supporting the fact that the ownership of trees in dispute are in fact HALF ON MY PROPERTY. Each of these trees were mapped and identified in a supplemental survey prepared by Licensed Surveyor Robert Hennon." Plaintiff asserted that the survey made clear that the trees "straddle[d]" the property line between the two parcels of land, and, in any event, that the trees were not damaged by the trimming. Plaintiff urged that any supporting documents would be forwarded to defendant "upon request."

On July 26, 2012, defendant's counsel informed plaintiff that defendant's position on coverage remained unchanged, and that its coverage determination had considered the possibility that the trees were solely owned by plaintiff, were solely owned by Mr. Baccouche, or were jointly owned, and that the ownership of the

6

trees was irrelevant to the coverage determination because the damage occurred from nonaccidental conduct.

In a July 29, 2012 response to defendant's July 26 letter, plaintiff took issue with some minor factual assertions in the letter, but did not otherwise claim that the damage to the trees had arisen from any sort of accident within the meaning of the policy.

In an August 15, 2012 letter to plaintiff, defendant's counsel pointed out that plaintiff had not provided any facts addressing defendant's position that the incident was not an "accident" or "occurrence" within the meaning of the policy.

Plaintiff retained counsel. On November 19, 2012, plaintiff's counsel wrote to defendant's counsel, forwarding a copy of an arborist report commissioned by Mr. Baccouche, in which the arborist opined that the trees had been significantly pruned, with between 8 percent and 74 percent of the canopy being removed. Counsel's letter represented that if plaintiff was called to testify, she would testify that she hired an arborist to comply with Los Angeles Fire Department requirements, and that if the trees were excessively pruned, it was a result of her negligent supervision of the contractor she hired to do the pruning.

On December 17, 2012, defendant responded that plaintiff had never claimed or produced any evidence demonstrating that the tree trimmers exceeded the scope of her directions. Therefore, defendant's coverage determination was unchanged.

The parties continued to exchange correspondence disputing whether the "negligent" cutting of the trees by plaintiff's contractor would bring Mr. Baccouche's claims within the ambit of the policy. However, no evidence concerning the trimming of the trees was ever presented.

Plaintiff's motion for summary adjudication additionally included a declaration by plaintiff, in which she authenticated the documents in support of her motion (many of which are summarized above). Plaintiff's motion additionally included a 2009 letter from the Los Angeles Fire Department, stating

7

that her property had been inspected on May 12, 2009, and was not in compliance with the City's brush clearance ordinance. Specifically, the notice stated that all native brush and weeds within 200 feet of any residence must be cleared, and that trees taller than 18 feet should be trimmed so that no foliage was within six feet of the ground; smaller trees should have the lower one-third of their branches removed. A later notice showed plaintiff's property had again been inspected, and was found to be in compliance with the City's brush clearance ordinance. Plaintiff's declaration was silent on her hiring and supervision of independent contractors to trim Mr. Baccouche's trees; instead, the declaration simply authenticated her recorded statement to defendant.

The trial court granted defendant's motion, and denied plaintiff's motion, concluding that plaintiff had failed to demonstrate a potential for coverage, as the conduct at issue in Mr. Baccouche's lawsuit was nonaccidental, intentional conduct. The trial court also concluded that to the extent Mr. Baccouche's complaint alleged "negligent" conduct by plaintiff, there was no evidence whatsoever that the trees were injured in some accident, "e.g. by inadvertently striking a tree with a motor vehicle." The trial court also concluded that Mr. Baccouche's pleadings did not support plaintiff's "negligent supervision" theory. Plaintiff timely appealed the trial court's judgment of dismissal.

## DISCUSSION

Defendant contends it had no duty to defend plaintiff in Mr. Baccouche's lawsuit, reasoning that the claims all arose from plaintiff's nonaccidental conduct. Plaintiff contends there was a triable issue of fact regarding whether her conduct was accidental within the meaning of the policy, thereby precluding summary judgment.[1] We agree with defendant.

---

[1] Plaintiff also contends that the trial court misapplied the burdens of proof in ruling on the motions, and did not follow relevant authority. Because our review is de novo, we need not decide those issues.

8

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, at p. 850.) Where summary judgment has been granted, we review the trial court's ruling de novo. (*Aguilar*, *supra*, at p. 860.) We consider all the evidence presented by the parties in connection with the motion (except that which was properly excluded) and all the uncontradicted inferences that the evidence reasonably supports. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) We affirm summary judgment where the moving party demonstrates that no triable issue of material fact exists and that it is entitled to judgment as a matter of law. (§ 437c, subds. (c), (f).) Our review of the interpretation of an insurance contract on undisputed facts is also de novo. (*State Farm General Ins. Co. v. Frake* (2011) 197 Cal.App.4th 568, 577 (*Frake*).)

An insurer owes its insured a broad duty to defend against claims creating a *potential* for indemnity. (*Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 590.) The duty to defend is broader than the duty to indemnify, and may exist even if there is doubt about coverage. (*Id.* at p. 591; see also *Frake*, *supra*, 197 Cal.App.4th at p. 577.) When determining whether a duty to defend exists, the court looks to all of the facts available to the insurer at the time the insured tenders its claim for a defense. (*Vann v. Travelers Companies* (1995) 39 Cal.App.4th 1610, 1614-1615.) Initially, the court compares the allegations of the complaint with the terms of the policy. (*Frake*, *supra*, at p. 578.) The proper focus is on the facts alleged in the complaint, rather than the alleged theories for recovery. Nevertheless, the insured " ' "may not speculate about unpled third party claims to manufacture coverage," ' and the insurer has no duty to defend where the potential for liability is ' "tenuous and farfetched." ' The ultimate

9

question is whether the facts alleged 'fairly apprise' the insurer that the suit is upon a covered claim." (*Michaelian v. State Comp. Ins. Fund* (1996) 50 Cal.App.4th 1093, 1106, citations omitted.) Facts extrinsic to the complaint may also be examined and may either establish or preclude the duty to defend. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19.) Any doubt as to whether the facts give rise to a duty to defend is resolved in favor of the insured. (*Vann*, at pp. 1614-1615.)

On summary judgment, "[t]o prevail [on the duty to defend issue], the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales." (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300.) "[W]hen an insurer seeks summary judgment on the ground the claim is excluded, the burden is on the insurer to prove that the claim falls within an exclusion." (*Brodkin v. State Farm Fire & Casualty Co.* (1989) 217 Cal.App.3d 210, 216.) In contrast, an insured must prove its claim falls within the policy's coverage, even when the insurer has moved for summary judgment. (*Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398, 1407.)

Here, the policy covers property damage resulting from an occurrence, and the policy defines an occurrence as an accident. "Under California law, the word 'accident' in the coverage clause of a liability policy refers to the conduct of the insured for which liability is sought to be imposed on the insured." (*Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302, 311 (*Delgado*).) "An intentional act is not an 'accident' within the plain meaning of the word." (*Royal Globe Ins. Co. v. Whitaker* (1986)

10

181 Cal.App.3d 532, 537, fn. omitted.) "In the context of liability insurance, an accident is ' "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." ' [Citation.]" (*Delgado*, at p. 308.)

The term "accident" refers to the nature of the insured's conduct, and not to its unintended consequences. (*Frake*, *supra*, 197 Cal.App.4th at p. 579.) An accident "is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." (*Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50 (*Merced*).) When an insured intends the acts resulting in the injury or damage, it is not an accident "merely because the insured did not intend to cause injury. The insured's subjective intent is irrelevant." (*Fire Ins. Exchange v. Superior Court* (*Bourguignon*) (2010) 181 Cal.App.4th 388, 392, citation omitted; see also *Merced*, at p. 48.)

Nevertheless, coverage is not always precluded when the insured's intentional acts result in injury or damage. (*Frake*, *supra*, 197 Cal.App.4th at p. 580.) An accident may exist "when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity." (*Merced*, *supra*, 213 Cal.App.3d at p. 50.) For example, "[w]hen a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury -- hitting the other car -- was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident. On the other hand, where the driver was speeding and deliberately hit the other car, the act directly responsible for the injury -- hitting the other car -- would be intentional and any resulting injury would be directly caused by the driver's intentional act." (*Ibid.*)

Here, plaintiff posits that although she deliberately hired a contractor to trim the trees, the excessive cutting was not an intended consequence, and should be deemed an accident. Specifically, she maintains that the excessive cutting

11

could have resulted from "miscalculation by the independent contractors, or it could have been as a result of a mishap with a motor vehicle . . . or truck . . . used in the tree trimming process, or by falling ladders, malfunctioning chainsaws or any number of other instrumentalities. All of these were possible 'accidents' causing the alleged excessive cutting." Plaintiff also posits that the allegations of the second amended complaint support a claim that she negligently hired or supervised the tree trimmers.

As discussed, *ante*, it is completely irrelevant that plaintiff did not intend to damage the trees, because she intended for them to be pruned. (*Fire Ins. Exchange v. Superior Court*, *supra*, 181 Cal.App.4th at p. 392; see also *Merced*, *supra*, 213 Cal.App.3d at p. 48.) Moreover, it is undisputed that the contractor intended to cut the trees, and absolutely no facts exist, in the complaint or otherwise, indicating that some unforeseen accident (such as a slip of the chainsaw) caused the damage to the trees. In fact, it was always plaintiff's position that the trees had not been damaged or pruned excessively (and therefore were not subject to an accident), and that they had been cut in accordance to the City's brush clearance ordinance. "An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114.)

Also nonexistent are any facts supporting plaintiff's theory that her negligent supervision of the contractors brings the complaint within the terms of the policy. Negligent supervision requires: an employer supervising an employee; who is incompetent or unfit; the employer had reason to believe undue risk of harm would exist because of the employment; and the harm occurs. (*Federico v. Superior Court* (1997) 59 Cal.App.4th 1207, 1213-1214.) There are simply no facts, in the complaint or otherwise, supporting the elements of this claim.

Plaintiff's reliance on *Firco, Inc. v. Fireman's Fund Ins. Co.* (1959) 173 Cal.App.2d 524 is misplaced. In *Firco*, the appellate court concluded that the

12

insurer had a duty to defend an action for trespass to trees, because, even though the policy exempted from coverage intentional acts, and the complaint alleged the trespass was malicious and intentional, trespass to trees can be committed *involuntarily* under Civil Code section 3346, and therefore, there was a *possibility* of coverage under the allegations of the complaint. (*Firco*, at p. 529.) However, in *Firco*, there was no extrinsic evidence concerning *how* the damage to the trees was caused, as there is in this case. (*Ibid.*)

Under any view of the underlying events, the trimming of the trees was no accident. Plaintiff failed to carry her burden to show any of Mr. Baccouche's claims *may* fall within the scope of the policy. (*Montrose Chemical Corp. v. Superior Court, supra*, 6 Cal.4th at p. 300.) Accordingly, the trial court did not err in granting defendant's motion for summary judgment.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.


GRIMES, J.

WE CONCUR:

BIGELOW, P. J.


FLIER, J.


13

Filed 5/20/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SHELLY ALBERT, | B257792 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC060422) |
| v. | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| MID-CENTURY INSURANCE COMPANY, | **[No change in judgment]** |
| Defendant and Respondent. | |

THE COURT:

     The opinion in the above-entitled matter filed on April 28, 2015, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

     There is no change in the judgment.

_____

BIGELOW, P. J.          FLIER, J.          GRIMES, J.