Filed 8/20/24  Rancho Oaks Investments v. Mid-Century Ins. Co. CA2/6
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RANCHO OAKS INVESTMENTS, LLC, et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>MID-CENTURY INSURANCE COMPANY, et al.,<br><br>     Defendants and Respondents. | 2d Civ No. B330122<br>(Super. Ct. No. 56-2022-00567432-CU-BC-VTA)<br>(Ventura County) |

     This is an appeal from the judgment entered after the trial court granted respondents' motion for summary judgment. Appellants are Rancho Oaks Investments, LLC (Rancho); Andrew Winchester (Andrew), the personal representative of the Estate of Richard Winchester (Richard); and Andrew, Trustee of the Winchester Family Trust (the Trust).  Appellants filed an action against their insurance companies, respondents Mid-Century Insurance Company (Mid-Century) and Farmer's Insurance Exchange (Farmers).  The complaint alleged that respondents

had wrongfully refused to defend appellants against actions filed by two companies – Starbucks Corporation and Lighting & Bulbs Wholesale Supply, Inc. (L&B). Appellants had leased commercial property to both companies. L&B sued Rancho and Starbucks for damages. Starbucks filed a cross-complaint against appellants and L&B.

Appellants contend: (1) respondents are bound by their employees' "admissions" that respondents had a duty to defend appellants; (2) irrespective of their employees' admissions, respondents' insurance policies required them to defend appellants.

We conclude respondents are not bound by alleged "admissions" of their employees. We also conclude respondents did not have a duty to defend appellants because the property damage claimed by L&B was not "caused by an 'occurrence'" within the meaning of the insurance policies, i.e., it was not caused by "an accident." Accordingly, we affirm.

*L&B's Complaint against Rancho and Starbucks*

In February 2018 L&B filed its operative fourth amended complaint (the complaint) against Rancho and Starbucks. The complaint alleged: In May 2005 Rancho leased to L&B the store at 45 North Rancho Road in Thousand Oaks, hereafter "the L&B Property." L&B "operate[d] a wholesale lighting supply business." It "enjoyed the sole and exclusive use of the [L&B] Property, including the driveway and parking lot located in front of [the] store's entrance. Customers had easy access to [the] driveway and parking lot through the entrance to the [L&B] Property on Rancho Boulevard."

"Adjacent to the [L&B] Property is a property owned by the Winchester Family Trust." This property is hereafter referred to

as "the Winchester Property." Richard Winchester "is the trustor and/or beneficiary of the [Trust]." Rancho, the owner of the L&B Property, "is directly or indirectly owned, operated and/or managed by . . . [Richard]."[1]

"In . . . October 2011, Rancho, through its authorized principal, [Richard] Winchester, represented to L&B that Rancho intended to enter into a Reciprocal Easement Agreement with the Trust for the purpose of granting reciprocal easements to one another for ingress, egress and parking over the [L&B] Property and the [Winchester] Property. [Richard], on behalf of Rancho, specifically represented to L&B that this easement would directly benefit L&B because its customers would be allowed to access the store not only from Rancho Boulevard, but also from Thousand Oaks Boulevard."

Richard said a new business would be located on the Winchester Property, but he did not say that the new business would be Starbucks. Based on Richard's representations, L&B "signed a document consenting to the Reciprocal Easement Agreement."

In March 2013 Starbucks "opened a coffee shop on" the Winchester Property. "It is a drive-thru only store with a walk up window." At first, "the [Starbucks] traffic did not rise to the level of restricting L&B's free use [of its] property." "However, this particular Starbucks[] location became more popular over time with the community, and more and more customers started

---

[1] On behalf of Rancho, Richard signed the 2005 lease between Rancho and L&B. Richard stated that he was the "Manager" of Rancho. In April 2023 Andrew Winchester declared that he is "the sole trustee of the Winchester Family Trust," the "Manager" of Rancho, and "the successor in interest to the Richard B. Winchester Estate."

frequenting it. The traffic problems thus became worse and worse."

"The cars line up for the drive-thru directly in front of L&B's store, and directly in front of the customer parking spaces for L&B's store. Furthermore, the cars in line for the Starbucks drive-thru often are backed up a ways down Rancho Boulevard, thus preventing L&B's customers from turning into the driveway on Rancho Boulevard. Essentially, in order to park in one of the parking spaces in front of L&B's store, a customer must wait in the long Starbucks drive-thru line until it can turn into the driveway on Rancho Boulevard, and then continue to wait in the line until it can turn into one of the parking spaces in front of the store. Even for customers that are willing to do all that, once they park, they are effectively trapped in the parking space, prevented from pulling out of the space by the same line of cars waiting to go through the Starbucks drive-thru, and left to the mercy of [the] line and the hope that someone in the line will let them back out of the parking space."

"[A] portion of Starbucks' curbed drive-thru lane is actually on a part of the . . . Property leased to L&B. . . . [T]he Starbucks' menu board and ordering system are also located on the [L&B] Property . . . . Thus, the fundamental implement[ation] of the Starbucks' business operations – the drive-thru ordering process – is conducted on L&B's leased property."

"The traffic caused by the easement Rancho granted to the Trust has substantially interfered with L&B's use and quiet enjoyment of the Property. It has substantially diminished the number of customers that enter the store, and substantially impacted L&B's profitability. L&B has received numerous complaints from customers about the traffic and parking

4

situation, and long-time customers have stopped coming to the store entirely."

The complaint alleged six causes of action: (1) breach of lease against Rancho, (2) breach of implied covenants against Rancho, (3) negligent misrepresentation against Rancho, (4) creation of a nuisance against Starbucks, (5) declaratory relief against all defendants, (6) trespass against Starbucks. The complaint sought an award of damages against Rancho and Starbucks.

*Starbucks' Cross-Complaint*

Starbucks filed a cross-complaint against Richard, the Trust, Rancho, and L&B. Starbucks alleged that its lease of the Winchester Property "incorporated the [reciprocal easement] and granted Starbucks the right to operate a drive-through facility containing drive-through lanes with the right to reciprocal ingress, egress and parking on the [L&B] Property." (Capitalization omitted.) The cross-complaint consisted of 13 causes of action. The ninth cause of action was for equitable indemnity against Rancho and Richard. It alleged: "In the event that Starbucks is held liable to [L&B], or to any other party . . . , such liability arises only by reason of the . . . negligence or other faults of Rancho [and Richard] . . . , and through no fault of Starbucks . . . ." [¶] "[] By reason of the foregoing, Starbucks is entitled to equitable indemnification from Rancho [and Richard] . . . ." (Capitalization omitted.)

*Policy Provisions*

We take judicial notice that Mid-Century and Farmers are members of the Farmers Insurance Group <http://www.farmers. com/companies/state> [as of June 17, 2024], archived at http://

5

Perma.cc/Z3DY-AVP3>.  Mid-Century insured Richard and the Trust.  Farmers insured Rancho.  The relevant provisions of both policies are identical.

The policies provide: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' to which this insurance applies.  We will have the . . . duty to defend the insured against any 'suit' seeking those damages."  Coverage for "'property damage'" applies only if the damage "is caused by an 'occurrence.'"  "'Property damage'" means "[p]hysical injury to tangible property" and "[l]oss of use of tangible property that is not physically injured."  "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The policies do not define the term "accident."

<em>Appellants' Tender</em>

Rancho tendered defense of L&B's complaint and Starbucks' cross-complaint to its insurer, Farmers.  Richard and the Trust tendered defense of Starbucks' cross-complaint to their insurer, Mid-Century.

In November 2017 Farmers sent a letter to Rancho and Richard.  The letter said in part: "We are providing a defense to Rancho Oaks Investment, LLC for the complaint filed by [L&B] and to Rancho Oaks Investment, LLC and Richard B. Winchester for the Cross-Complaint filed by Starbucks Corporation.  The potential for coverage under the policy is the alleged claims of 'property damage' as the term is defined by the policy.  Farmers specifically reserves the right to deny coverage for the following reasons . . . ."

6

In December 2017 Mid-Century sent a similar letter to the Trust, Richard, and Andrew. Mid-Century said it would provide them a defense "for the Cross-Complaint filed by Starbucks Corporation."

In October 2019 Farmers informed Rancho and Richard that it was withdrawing from their defense. Farmers explained: "Farmers concludes that there is no potential for coverage under the Policy because all of the claims asserted against Rancho are contractual or intentional in nature. Accordingly, there are no claims against Rancho seeking recovery of 'property damage' caused by an 'occurrence' such that the insuring agreement requirements for Coverage A (Bodily Injury and Property Damage Liability) are not satisfied." In October 2019 Mid-Century similarly informed Richard and the Trust that it was withdrawing from their defense.

*Appellants' Complaint against Respondents*

According to appellants, "[L&B's] Complaint and Starbucks Cross-Complaint . . . were dismissed with prejudice, pursuant to a settlement . . . ." After the dismissals, appellants filed the instant complaint against respondents.

Appellants' complaint consisted of five causes of action. It alleged: "As a result of [respondents'] bad faith denial of their coverage obligations . . . , [appellants] have been forced to fund their own legal defense . . . , and in doing so, have incurred substantial costs including, but not limited to, attorneys' fees and litigation costs . . . , funds [expended] in order to settle the action, and a loss of valuable claims necessary to settle the action. [Appellants] have been damaged in an amount in excess of $1,000,000."

*An Insurer's Duty to Defend*

"An insurer owes its insured a broad duty to defend against claims creating a *potential* for indemnity.  [Citation.]  The duty to defend is broader than the duty to indemnify, and may exist even if there is doubt about coverage.  [Citations.]  When determining whether a duty to defend exists, the court looks to all of the facts available to the insurer at the time the insured tenders its claim for a defense.  [Citation.]  Initially, the court compares the allegations of the complaint with the terms of the policy.  [Citation.]  The proper focus is on the facts alleged in the complaint, rather than the alleged theories for recovery. . . .  '[T]he insurer has no duty to defend where the potential for liability is '"tenuous and farfetched."'  The ultimate question is whether the facts alleged "fairly apprise" the insurer that the suit is upon a covered claim.'  [Citation.]  Facts extrinsic to the complaint may also be examined and may either establish or preclude the duty to defend.  [Citation.]  Any doubt as to whether the facts give rise to a duty to defend is resolved in favor of the insured."  (*Albert v. Mid-Century Ins. Co.* (2015) 236 Cal.App.4th 1281, 1289-1290 (*Albert*).)

*Summary Judgment Based on Absence of*
*Insurer's Duty to Defend and Standard of Review*

"A defendant moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that the defendant is entitled to judgment as a matter of law.  [Citations.] . . . [¶]  On appeal, we independently review the record that was before the trial court to determine whether the facts give rise to a triable issue of material fact.  [Citation.]  In making this determination, the moving party's evidence is strictly construed, while the opposing party's evidence is liberally

8

construed.  [Citation.]  Because summary judgment is a drastic measure that deprives the losing party of a trial on the merits, summary judgment may not be granted unless it is clear there are no triable issues of material fact." (*McAlpine v. Norman* (2020) 51 Cal.App.5th 933, 938.)

"On summary judgment, '[t]o prevail [on the duty to defend issue], the insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential.*  In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*  Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales.'  [Citation.]  '[W]hen an insurer seeks summary judgment on the ground the claim is excluded, the burden is on the insurer to prove that the claim falls within an exclusion.'  [Citation.]  In contrast, an insured must prove its claim falls within the policy's coverage, even when the insurer has moved for summary judgment." (*Albert, supra*, 236 Cal.App.4th at p. 1290, brackets for "on the duty to defend issue" in original.)

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)  "This is true even on de novo review [citation] . . . ." (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 708.)

*Respondents Are Not Bound by Employees' Opinions*
*that the L&B Action Raised a Potential for Coverage*

Appellants contend, "[T]he trial court erred in finding that [respondents] are not bound by the admissions of their personnel, who admitted on numerous occasions that the L&B action raised the potential for coverage and thus a duty to defend."  The alleged "admissions" are actually opinions expressed by respondents' employees during confidential communications with other employees.  The opinions are "contained within [respondents'] claim files that were produced in discovery."

The employees' opinions do not raise a triable issue of material fact.  In *Chatton v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 865 (*Chatton*), the court rejected the insureds' argument "that there was coverage for advertising injury under the terms of the [insurance] policy because National Union's employees themselves admitted the existence of such liability."  The court reasoned: "It is well settled that the interpretation of an insurance policy is a *legal* rather than a *factual* determination [citations].  Consistent therewith, it has been held that opinion evidence is completely irrelevant to interpret an insurance contract."  (*Ibid.*; see also *Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 601-602 ["the insureds' argument that insurance company employee opinions or memos gave rise to a duty to defend in this case must fail. . . .  Without more, writings or memos by insurance company personnel venturing their opinions as to whether a defense should be afforded do not constitute 'admissions' of a defense duty"].)

In arguing to the contrary, appellants rely on *North Counties Engineering, Inc. v. State Farm General Ins. Co.* (2014) 224 Cal.App.4th 902 (*North Counties*).  *North Counties* is

distinguishable.  There, a jury trial was conducted on State Farm's duty to defend.  During the trial, State Farm's "own claims personnel" *testified* "that the pertinent policy information—that is, the [policy's] declarations pages . . . — demonstrated a duty to defend." (*Id.*, at p. 922.)  In determining whether there was substantial evidence of a duty to defend, the Court of Appeal considered the "admissions" of the claims personnel.  (*Id.*, at p. 923.)

Unlike *North Counties*, here respondents' employees did not *testify* "that the pertinent policy information . . . demonstrated a duty to defend." (*North Counties, supra*, 224 Cal.App.4th at p. 922.)  They merely expressed their opinions on the duty-to-defend issue during confidential communications with other employees.  If their opinions were deemed to be binding upon respondents, free discussion among insurance company employees would be seriously impeded.  An employee would be reluctant to express an opinion that the company had a duty to defend for fear that the opinion would be discoverable and would be used against the company if it decided not to defend.

*Appellants' Argument that L&B's Alleged Property Damage Is Covered by Respondents' Insurance Policies*

Respondents' insurance policies provide liability coverage for "property damage."  The term "[p]roperty damage" includes the "[l]oss of use of *tangible* property that is not physically injured," provided that the damage "is caused by an 'occurrence.'" (Italics added.)  "[S]trictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to tangible property covered by a comprehensive general liability policy."

11

(*Giddings v. Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 219.)

Appellants claim "the L&B action . . . raise[d] the possibility of property damage due to loss of use of tangible property." The tangible property was L&B's "leasehold estate," which gave it the right to possess the L&B Property.

Appellants explain: "L&B alleged that access to its store and parking spaces was blocked, preventing its customers from parking at and entering the store." Thus, "L&B was allegedly unable to possess the property as intended, with access to its customers." "Because L&B alleged loss of this possession, it alleged loss of use of tangible property not physically injured, such that these claims fall under the Policies' definition of 'property damage.'" Appellants also maintain that "L&B impliedly alleged that it was rendered unable to use its tangible personal property, including its inventory, cash registers, invoice slips, etc."

As to L&B's alleged loss of its right to possess the L&B Property, appellants' position is supported by dictum in *Thee Sombrero, Inc. v. Scottsdale Ins. Co.* (2018) 28 Cal.App.5th 729, 738 (*Thee Sombrero*) ["a lessee in possession has a tangible property interest in the leased premises"].)[2] But in *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.* (2007) 148 Cal.App.4th 976, 987, the court concluded that a tenant's "leasehold interests were not tangible property." In *Conway v. Northfield Insurance Company*

---

[2] *Thee Sombrero* said, "[O]ur view on this point is dictum, because our case is distinguishable. Here, Sombrero is the owner of the property, not a lessee. As such, it plainly has an interest in tangible property." (*Thee Sombrero, supra*, 28 Cal.App.5th at p. 738.)

(N.D. Cal. 2019) 399 F.Supp.3d 950, 960-961, the court determined that, because *Thee Sombrero*'s view "was expressed in dictum, it does not carry precedential value. . . . *Golden Eagle*'s holding that leaseholds do not constitute tangible property remains the current state of the law [in California] . . . . Thus, . . . the underlying action [by tenant against her landlord] does not raise a potential claim for 'loss of use of tangible property' arising out of [tenant's] inability to use the restaurant premises."

> *L&B's Alleged Property Damage Is Not Covered by the Policies Because It Was Not Caused by an "Occurrence"*

We need not decide whether L&B's complaint sought damages for "[l]oss of use of tangible property that is not physically injured" within the meaning of the insurance policies. Even if the complaint sought such damages, respondents would still be entitled to judgment as a matter of law because the loss of use was not caused by an "occurrence," which the policies define as "an accident."

"The term 'accident' refers to the nature of the insured's conduct, and not to its unintended consequences. [Citation.] An accident 'is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage.' [Citation.] When an insured intends the acts resulting in the injury or damage, it is not an accident 'merely because the insured did not intend to cause injury. The insured's subjective intent is irrelevant.'" (*Albert, supra,* 236 Cal.App.4th at p. 1291.)

Here, there is no triable issue of material fact whether appellants' conduct was an "accident." Rancho, Richard, and the Trust intentionally sought the reciprocal easement. Richard and

the Trust intentionally leased the Winchester Property to Starbucks. As Starbucks stated in its cross-complaint, the lease "granted Starbucks the right to operate a drive-through facility containing drive-through lanes with the right to reciprocal ingress, egress and parking on the [L&B] Property." (Capitalization omitted.) It is irrelevant that appellants did not intend to interfere with the operation of L&B's business.

In their opening brief appellants state, "[The] Starbucks outlet, . . . due to its unexpected popularity, led to increased traffic" that "allegedly prevented customers of [L&B] from accessing the L&B store." Starbucks' "unexpected popularity" is not an "'additional, unexpected, independent, and unforeseen happening . . . that produce[d] the damage.'" (*Albert, supra,* 236 Cal.App.4th at p. 1291.) The damage was produced by appellants' drafting of the reciprocal easement and the Starbucks lease without any meaningful limitation on Starbucks' customers' use of the easement.

Appellants intended that Starbucks' customers would use the L&B Property for parking and access to the Winchester Property. This is exactly what happened. That appellants did not anticipate Starbucks' "popularity" does not convert their deliberate conduct into an "accident." It was reasonably foreseeable that, as Starbucks became established in the area and more people became aware of its presence, traffic problems at the adjacent L&B Property would occur. We doubt that L&B would have consented to the easement had it known that the Winchester Property was going to be leased to a Starbucks "drive-thru only store with a walk up window" and that Starbucks' customers would use the entry into L&B's parking lot to access the drive-thru.

14

Appellants claim respondents' duty to defend is established by L&B's third cause of action against Rancho for negligent misrepresentation and Starbucks' ninth cause of action against Rancho and Richard for equitable indemnity.  In its third cause of action, L&B alleged that Richard and Rancho had "specifically represented to L&B that [the reciprocal] easement would directly benefit L&B."  "Rancho negligently failed to disclose to L&B that the proposed tenant [for the Winchester Property] would be a drive-thru establishment, [and] that the operation of the drive-thru would result in cars blocking the parking spaces in front of L&B's store and blocking the Rancho Boulevard entrance to the [L&B] Property."  "Had L&B known the true facts, it would not have . . . consented to the Reciprocal Easement Agreement."

In its ninth cause of action for equitable indemnity, Starbucks alleged that, if it is "held liable" to L&B, "such liability is the result of and caused by the negligence" of Rancho and Richard.  Starbucks quoted paragraphs 33 through 35 of L&B's second amended complaint, which appear as paragraphs 39 through 41 of the cause of action for negligent misrepresentation in L&B's operative fourth amended complaint.

Appellants argue: "Starbucks's claim for indemnity was based on the fact that if it was held liable to L&B, it was due to Appellants' negligence (i.e., accidental acts) and in turn, this is further evidence that a duty to defend arose [from] L&B's claims against the Appellants."  "[B]ecause L&B's claims against the Appellants and Starbucks ([as well as] Starbucks's claims against the Appellants) arose out of 'negligence' and 'carelessness' [record citation], they arose out of an 'occurrence' under the Policies."

15

"[T]he L&B action included claims against Insureds based . . . on negligence, which by definition means that at least some claims were based on *unintentional* acts."

L&B's and Starbucks' allegations of negligence do not give rise to a duty to defend appellants. "[N]egligent misrepresentations causing investment loss or loss of other economic interest are considered purposeful rather than accidental for the purpose of insurance coverage." (*Chatton*, *supra*, 10 Cal.App.4th at p. 861.) "The underlying rationale of this rule is that negligent misrepresentation requires intent to induce reliance and, therefore, is a subspecies or variety of fraud which is excluded from policy coverage." (*Id.*, at pp. 861-862; see *The Travelers Property Casualty Co. of America v. Actavis, Inc.* (2017) 16 Cal.App.5th 1026, 1040 ["Claims involving intentional or negligent misrepresentations do not constitute an accident under a liability policy"]; *Miller v. Western General Agency, Inc.* (1996) 41 Cal.App.4th 1144, 1150 ["Whether the Millers' misrepresentations were intentional or simply negligent, they did not constitute an 'accident' " within the meaning of the insurance policy].)

*Disposition*

The judgment is affirmed. Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.        BALTODANO, J.

16

Ronda J. McKaig, Judge

Superior Court County of Ventura

_____

Foley Bezek Behle & Curtis and Kevin D. Gamarnik, for Plaintiffs and Appellants.

Woolls Peer Dollinger & Scher and Gregory B. Scher, H. Douglas Galt, for Defendants and Respondents.